IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCHOOL DISTRICT OF | : | CIVIL ACTION |
| PHILADELPHIA | : | NO. 14-4910 |
| | : | |
| v. | : | |
| | : | |
| ROBERT KIRSCH and KAREN MISHER, | : | |
| Parents of A.K., a minor | : | |

| | | |
|---|---|---|
| SCHOOL DISTRICT OF | : | CIVIL ACTION |
| PHILADELPHIA | : | NO. 14-4911 |
| | : | |
| v. | : | |
| | : | |
| ROBERT KIRSCH and KAREN MISHER, | : | |
| Parents of N.K., a minor | : | |

O'NEILL, J.                                                     January 11, 2017

**MEMORANDUM**

Now before me in these consolidated civil actions[1] are motions by defendants Robert

Kirsch and Karen Misher, parents of twin siblings A.K. and N.K seeking attorney's fees and

costs pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C.

§ 1415(i)(3)(B), the Rehabilitation Act of 1973, 29 U.S.C. § 794a, and the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12205.  Civ. A. 14-4910, Dkt. No. 48; Civ. A. 14-4911,

Dkt. No. 36.  Also before me are plaintiff the School District of Philadelphia's responses in

opposition.[2]  Civ. A. 14-4910, Dkt. No. 57; Civ. A. 14-4911, Dkt. No. 45.  I will grant parents'

motions in part for the reasons that follow.

---

[1]     Because of parallels between the documents filed in Civ. A. 14-4910 and Civ. A.
14-4911, citations to docket entries in this Opinion will be to documents docketed in Civ. A. 14-
4910 unless otherwise noted.

[2]     Parents did not file replies.

**BACKGROUND**

A.K. and N.K. are twin minors with autism.  These actions arise out of a Pennsylvania Special Education Due Process Hearing Officer's July 2014 decisions regarding the twins' educational placements.  On November 30, 2015, I affirmed the Hearing Officer's decisions and granted in part and denied in part the parties' cross motions for judgment on the administrative record.  Dkt. Nos. 29, 30.  The District's motion was granted insofar as it sought to affirm the Hearing Officer's decisions that the District offered A.K. and N.K. a "free appropriate public education," or FAPE, under the Individuals with Disabilities Education Act (IDEA) in December 2013.  20 U.S.C. § 1400(d)(1)(A).  See Dkt. No. 30.  The District's motion was denied insofar as it sought to reverse the Hearing Officer's decisions that the District was obligated to reimburse parents for the basic costs of tuition and transportation at the private school for A.K. and N.K. from September 2013 through December 2013.  Id.  Parents' motion was granted insofar as parents sought to affirm the Hearing Officer's decisions that the District denied A.K. and N.K. a FAPE from the start of the 2013-14 school year through December 2013 and insofar as parents sought to affirm the Hearing Officer's decisions that A Step Up Academy (ASUA) was an appropriate private placement for A.K. and N.K.  Id.  Parents' motion was denied insofar as they sought to reverse the Hearing Officer's decisions that the District offered A.K. and N.K. a FAPE in December 2013.  Id.

Additionally, the District's motion to dismiss parent's counterclaims or, in the alternative, for summary judgment was granted both to the extent that the District sought judgment in its favor with respect to parents' claim that the District denied A.K. and N.K. a FAPE with its offered 2014-15 individualized education plans (IEPs) and to the extent that the District sought judgment in its favor with respect to parents' counterclaims under the Americans with

Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.  Id.

I also held that "under the stay-put provision" of IDEA, 20 U.S.C. § 1415(j), "the District is obligated to fund the twins' education at ASUA for the entirety of the 2013-14 school year even though the Hearing Officer also found that the District offered the twins a FAPE in December 2013."  Dkt. No. 22 at ECF p. 37.  I found that "as with the 2013-14 school year, under IDEA's stay put provision . . . parents are entitled to tuition reimbursement for the 2014-15 school year even if the IEPs offered by the District for 2014-15 provided the twins with a FAPE."  Id. at ECF p. 41.  Finally, "I agree[d] with parents that IDEA's stay put provision obligates the District to continue to reimburse parents for the twins' tuition until their claims with respect to the 2013-14 and 2014-15 school years are resolved."  Id. at ECF p. 45. Accordingly, the District was ordered "to reimburse parents for the basic costs of A.K. and N.K.'s tuition and transportation at A Step Up Academy from September 2013 to December 2013" and "to reimburse parents for the basic costs of A.K. and N.K.'s tuition and transportation at A Step Up Academy from December 2013 through the exhaustion of all appeals from the decisions of the Hearing Officer."  Dkt. No. 30.

The Court directed the parties to confer and reach a stipulation with respect to the amounts due to parents, id., but they were unable to do so.  Thereafter, I referred the parties' motions regarding the form and amount of a judgment to be entered, Dkt. No. 32, Dkt. No. 33, to Magistrate Judge Carol Sandra Moore Wells for a report and recommendation.  Dkt. No. 34. Citing the stay-put provision, Judge Wells made the following findings of fact with respect to the amounts of basic tuition due for each child:  (1) $35,000.00 for the 2013-14 school year; (2) $7,250.00 for the 2014 extended school year (ESY); (3) $35,000.00 during the 2014-15 school year; (4) $7,650.00 for ESY 2015; (5) $40,000.00 to cover the 2015-16 school year; and (6)

$8,300.00 for ESY 2016.  Dkt. No. 42 at ECF p. 2-3.  Additionally, she found that

"transportation costs for the 2013-14, 2014-15 and 2015-16 school years are $3,201.68."  Id. at

ECF p. 3.  She then recommended that any award to parents be reduced by $44,633.00 – the

amount of Bravo Foundation scholarships awarded to A.K. and N.K.  Id. at ECF p. 5.  Judge

Wells ultimately recommended that parents' motion for entry of judgment be granted and that

judgment be entered in their favor in the amount of $227,788.68.  Dkt. No. 42.  On June 1, 2016,

I entered judgment in favor of parents and against the District in the recommended amount.  See

Dkt. No. 46.

## DISCUSSION

Under IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of

the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C.

§ 1415(i)(3)(B)(i)(I).  The ADA and Section 504 also provide for an award of fees and costs to

prevailing parties.  See 42 U.S.C. § 12205; 29 U.S.C. § 794a(b).  The lodestar formula, which

multiplies by a reasonable hourly rate the number of hours reasonably expended, provides the

starting point for determining reasonable attorneys' fees.  Hensley v. Eckerhart, 461 U.S. 424,

433 (1983); see also Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).  Parents seek an

award of attorneys' fees and costs in the total amount of $289,694.63 as prevailing parties in the

administrative proceedings below and in the present civil actions.  They ask for an award to

Reisman Carolla Gran LLP for its work on the federal civil action of $89,240.10 in fees and

$1,185.86 in costs, a total of $90,425.96.  For the administrative proceedings for both A.K. and

N.K., parents ask for an award to the Law Offices of Caryl Andrea Oberman of $196,517.00 for

fees and $2,751.73 for costs, a total of $199,268.73.  Dkt. No. 48 at ECF p. 5-6.

In response to parents' motions, the District summarizes the fees billed by parents'

attorneys in a table as follows:

| Summary of Lodestar | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Hourly Rate** | **Fees** |
| **A.K – Due Process Hearing** | | | |
| Caryl Oberman | 1.0 | $650 | $650.00 |
| Liliana Yazno-Bartle | 249.0 | $505 | $125,745.00 |
| Maureen Stankiewicz, Paralegal | 2.90 | $120 | $348.00 |
| Heike Ross, Paralegal[3] | 16.4 | $90 | $1,476.00 |
| **Subtotal A.K.** | 271.5 | | $128,829.50 |
| **N.K. – Due Process Hearing** | | | |
| Caryl Oberman | 0.0 | $650 | $0.00 |
| Liliana Yazno-Bartle | 129.9[4] | $505 | $65,599.50 |
| Maureen Stankiewicz, Paralegal | 2.9 | $120 | $348.00 |
| Heike Ross, Paralegal | 18.9 | $90 | $1,701.00 |
| **Subtotal N.K.** | 151.7 | | $67,687.50 |
| **Total – Due Process Hearing** | 423.2 | | $196,517.00 |
| **Federal Civil Action** | | | |
| Judith Gran | 76.395 | $595 | $45,455.03 |
| Catherine Merino Reisman | 84.63 | $495 | $41,891.85 |
| Sarah Zuba | 4.8 | $400 | $1,920.00 |
| **Subtotal** | 165.825 | | $89,266.88 |
| **Grand Total** | 589.025 | | $282,783.88 |

The District contends that the "[r]easonable attorney's fees to be awarded should not exceed

$65,063.25 for the services rendered by the Law Offices of Caryl Oberman for the administrative

proceeding ($86,751 reduced by 25%) and $64,580.55 for the services rendered by Reisman,

Carolla, Gran for the federal civil action, for a total of $129,643.80." Dkt. No. 57 at ECF p. 22.

It concedes that parents "may be entitled to a discretionary award of reimbursement for

---

[3]      Yazno-Bartle's declaration identifies Ross as a "Legal Assistant," not a paralegal. Dkt. No. 48-1 at ECF p. 3.

[4]      In her declaration, Yazno-Bartle asserts that she "spent a total of 249 hours working on this matter." Dkt. No. 48-1 at ECF p. 4. Based on her billing records, however, her declaration does not appear to take into account the amount of time she billed on the matter for N.K.

reasonable attorney's fees under IDEA" and "does not dispute that parents were the prevailing parties in the administrative proceeding and in the federal civil action to a partial degree . . . ." Id. at ECF p. 3.  However, it opposes parents' motion on the grounds "that the hourly rates of the attorneys are unreasonable [and] the claimed hours spent are duplicative, excessive and unnecessary . . . ."  Id.  It also argues that "the copying costs and travel expenses [which parents seek to recover] are not authorized by law."  Id.  Additionally, the District objects to parents' attempt to recover "the federal court filing fees because the parents' litigation strategy was to remove the petitions for review filed in the Commonwealth Court to federal court."  Id.

Where an "adverse party raises objections to [a] fee request, the court possesses considerable discretion to adjust the award in light of those objections."  Loesch v. City of Phila., No. 05–0578, 2008 WL 2557429, at *2 (E.D. Pa. Jun. 25, 2008), citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  I will consider the District's arguments in turn.

## I.     Hourly Rates

The District challenges the reasonableness of parents' attorneys' hourly rates.[5]  A reasonable hourly rate is calculated "based on rates prevailing in the community in which the action or proceedings arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C); see also M.M. v. Sch. Dist. of Phila., 142 F. Supp. 3d 396, 404 (E.D. Pa. 2015) (same).  "[A] district court may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record."  Coleman v. Kaye, 87 F.3d 1491, 1510 (3d Cir. 1996).  The Court must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Maldonado v. Houstoun,

---

[5]        The District does not challenge the hourly rates for work performed by the paralegal and legal assistant at the Oberman firm.

256 F.3d 181, 184 (3d Cir. 2001).  As a starting point, "[t]he best evidence of the reasonable rate

for an attorney's time is the customary billing rate for clients . . . ."  Gwendolyn L. v. Sch. Dist.

of Phila., No. 12-0051, 2014 WL 2611041, at *2 (E.D. Pa. June 10, 2014).  However,

"[a]ttorneys may not rest on their own affidavits to support a claimed rate; rather, they must

submit evidence that the requested rates fall within the norm of attorneys in the relevant

community."  I.W. v. Sch. Dist. of Phila., No. 14-3141, 2016 WL 147148, at *5, citing Rode,

892 F.2d at 1183.  Predictably, the parties here have submitted conflicting affidavits regarding

the reasonableness of parents' attorneys' hourly rates.

 With respect to the attorneys involved in the administrative proceedings, parents seek an

hourly rate of $505 for Liliana Yazno-Bartle, who was admitted to the bar in 1993 and has 19

years of experience with special education matters.  Dkt. No. 48-1 at ECF p. 3.  Parents also seek

an hourly rate of $650 for a single hour of time spent on the matter by Caryl Oberman, who was

admitted to practice in 1974 and has 42 years of special education experience.  Dkt. No. 48-1 at

ECF p. 3-4.  Parents also seek to recover the costs of legal services performed by a paralegal

with 20 years of experience, billed at an hourly rate of $120, and by a legal assistant with

"four (5) [sic] years' experience," billed at an hourly rate of $90.  Id. at ECF p. 3.

 For the attorneys involved in the federal civil actions, parents seek an hourly rate of $595

for Judith A. Gran, who has 33 years of "disability rights law" experience and was admitted to

practice in 1983.  Dkt. No. 48-2 at ECF p. 2.  For Catherine Merino Reisman, who was admitted

to the bar in 1989 and who has practiced special education law since 2008, they seek an hourly

rate of $495.  Id. at ECF p. 4-5.  They request an hourly rate of $400 for the work performed by

Sarah Zuba, who was admitted to practice in 2002 and has 14 years of legal experience.  Id. at

ECF p. 5.

In support of their motion, parents submit the declaration of David Berney, a special education practitioner who has worked since 1996 in a civil rights practice that includes cases arising under special education laws.  Dkt. No. 48-3 at ECF p. 1-2.  Berney notes that his "own services are currently billed at a rate of $495 per hour."  Id. at ECF p. 9.  After reviewing the experience and qualifications of parents' attorneys, considering the 2014 Community Legal Services fee schedule and a 2008 National Law Journal survey of billing rates and taking into account recent court decisions regarding fee awards to "civil rights attorneys," Berney concludes that "the hourly rates sought here by Defendants' counsel . . . are reasonable and comparable to rates charged by attorneys of similar reputation and experience in the Southeastern Pennsylvania area."  Id. at ECF p. 9-15.

The District contends that the hourly rates sought for parents' attorneys are unreasonable and should instead be as follows:  Caryl Oberman, $400; Liliana Yazno-Bartle, $385; Judith Gran, $400; Catherine Merino Reisman, $385; and Sarah Zuba, $300.  Dkt. No. 57 at ECF p. 7.  It argues that the Court should not be persuaded by parents' reliance on the 2014 Community Legal Services of Philadelphia Fee Schedule[6] "which indicates that an hourly rate of $600-650 is appropriate for attorneys with more than 25 year[s] experience . . ." because "the Parties['] declarations and survey of recent decisions show that no other attorney in the special education field commands an hourly rate of $595, $495 or $650."  Id. at ECF p. 12.  The District also contends that Berney's declaration is incompetent evidence of prevailing market rates.  Id. at ECF p. 10.  It argues that Berney's conclusion is "self-interested," noting that "multiple judges in

---

[6]     Parents assert that the District has itself relied on and cited the CLS Fee Schedule with approval in other actions.  Dkt. No. 48 at ECF p. 14-15; see, e.g. E.C. v. Sch. Dist. of Phila., 91 F. Supp. 3d 598, 605 (E.D. Pa. 2015) ("The School District also contends that requested rates should be adjusted downward in light of a Community Legal Services ('CLS') fee schedule . . . .").

the Eastern District in 2013, 2014 and 2015 have determined a 'reasonable rate' for Mr. Berney's services . . . range[s] between $350 to $385." Id. at ECF p. 12. It also argues that Berney's declaration, along with the declarations of Yazno-Bartle and Gran "are insufficient because they provide no support for their conclusory opinions" regarding the reasonableness of the hourly rates requested. Id. at ECF p. 11. The District contends that the declarations do "not draw on comparisons of other practitioners of comparable skill, experience and reputation and the rates they are charging actual clients." Id.

In support of the rates which it proposes, the District relies on the declaration of Gabrielle Sereni, who posits that "given . . . recent [court] holdings concerning hourly rates of practitioners in this geographic region with similar or more experience to that of Attorneys Gran, Oberman, Reisman and Yazno-Bartle, an hourly rate in the range of $385-$450 reasonably reflects these colleagues' experience in the field of special education law in this geographical [sic] area." Dkt. No. 57-1 at ECF p. 10. Sereni cites two cases to bolster her conclusion. First, she cites School District of Philadelphia v. Williams, a March 2016 decision in which the Court held that "[i]t is clear that highly experienced special education lawyers in Philadelphia regularly seek compensation of between $400 and $500 per hour." No. 14-6238, 2016 WL 877841, at *3 (E.D. Pa. Mar. 7 2016); see also id. ("$600 is not the prevailing market rate for any special education attorney."). Sereni also cites M.M. v. School District of Philadelphia, a November 2015 decision where the Court awarded Berney an hourly rate of $385. 142 F. Supp. 3d 396, 406 (E.D. Pa. 2015), appeal dismissed (3d Cir. 15-3824, Sept. 9, 2016).

Ultimately, parents' submitted proof is not sufficient to establish that the hourly rates which they seek are reasonable. Other than Berney's declaration, they have not set forth any evidence to support a finding that the fees requested by their attorneys are indeed the fees they

ordinarily command in the market (e.g., billing statements to fee-paying clients).  Further,

Berney's declaration does not rely on any direct evidence of actual rates charged for similar

services by lawyers of reasonably comparable skill, experience and reputation other than his own

billing rate.  To the extent that Berney relies on prior cases to guide his conclusion regarding

reasonable hourly rates, his declaration does not rely on fee award determinations made solely in

the context of IDEA, the ADA or Section 504.  And even if it did, "prior cases are not even

particularly instructive as fees fluctuate to keep pace with inflation and changing market

conditions."  D'Orazio v. Washington Twp., No. 07-5097, 2011 WL 6717427, at *3 (D.N.J. Dec.

21, 2011).  Also, to the extent that Berney relies on the CLS fee schedule to support his

conclusion, at least one of my colleagues has held that "[t]he CLS fee schedule is not appropriate

for fixing hourly rates in IDEA cases," explaining that

> [t]he schedule is based only on years of practice.  It does not
> consider the attorney's experience in the relevant field, the level of
> participation in a case, and reputation in the field.  There is nothing
> in the schedule covering rates of attorneys practicing in the IDEA
> field.  Relying on it in an IDEA case would ignore Congress's
> direction to consider the attorney's "skill, reputation, and
> experience."

Rena v. Colonial Sch. Dist., No. 15-1914, 2016 WL 7374547, at *10 (E.D. Pa. Dec. 20, 2016);

see also Damian J. v. Sch. Dist. of Phila., 06-3866, 2008 WL 1815302, at *2 (E.D. Pa. Apr. 22,

2008) (finding the CLS rates could not be applied to determine the reasonable rate because "[t]he

only criteria reflected in the CLS fee schedule is years of experience" and it "does not take into

account the specialized skills . . . the attorneys bring to their practice, their experience in the

particular field of special education law, the size of the law firm, the level of work performed,

nor the positions of counsel").  But see M.W. v. Sch. Dist. of Phila., No. 15-5586, 2016 WL

3959073, at *4 (E.D. Pa. July 22, 2016) (considering the CLS fee schedule in the context of a

-10-

motion for fees under IDEA, but finding that "the fees set forth in the upper brackets of the 2014 CLS Fee Schedule seem out of sync with what attorneys in the special education field actually collect from their clients or from the School District"); M.M. v. Sch. Dist. of Phila., 142 F. Supp. 3d 396, 406 (E.D. Pa. 2015) (considering the 2014 CLS fee schedule, but not relying on it as the "exclusive tool" for determining reasonable hourly rates).

As for the District's evidence of reasonable rates, I also cannot give it full credit. First, as another of my colleagues has explained, while "[t]he School District is correct that Berney . . . ha[s] an incentive to support [parents' attorneys'] quest for a high rate in order to establish precedent for [his] own future fee requests . . . , the school district attorneys also have an incentive to prevent decisions establishing such high rates." Sch. Dist. of Phila. v. Williams, No. 14-6238, 2016 WL 877841, at *3 (E.D. Pa. Mar. 7, 2016) (Schiller, J.). To the extent that Sereni relies on court decisions to ground her declaration regarding reasonable hourly rates, Sereni neglects to mention that the parents in M.M. sought to recover just $395 per hour for Berney's work. 142 F. Supp. 3d at 405. In determining that the slightly lower rate of $385 was reasonable for Berney's work,[7] the Court noted that, "[a]ccording to the 2014 CLS Fee Schedule, the range of hourly rates for an attorney with twenty-one to twenty-five years['] experience is $520 to $590." Id. at 406. And in 2016, another judge in this Court determined that a reasonable fee for Berney was $425 per hour, explaining that "previous awards should not impose a hard cap on . . . fee[s]," given the increasing cost of practice and the possibility that Berney had charged below-market rates in prior cases. M.W., 2016 WL 3959073, at *4. Indeed, to the extent that prior decisions can provide any guidance, not all recent decisions have capped the hourly rates awarded to special education attorneys at $450 or less. See I.W. v. Sch. Dist. of Phila., No. 14-

---

[7]      The Court's $10 per hour reduction of Berney's rate in M.M. is far less substantial than the rate reductions which the District asks me to make in this litigation.

-11-

3141, 2016 WL 147148, at *9-10 (finding an hourly rate of $600 was reasonable for an attorney with 27 years of experience focused exclusively on special education matters).

Ultimately, weighing the declarations of Yazno-Bartle, Gran, Berney and Sereni, the tenure and experience of parents' attorneys' in the special education field and the record before me regarding rates awarded in this community for similar services by lawyers of reasonably comparable skill, experience, and reputation,[8] I find that slight reductions in the hourly rates charged by parents' attorneys are warranted to make them reasonable.  Therefore, I will base the fee award in this litigation on the following rates.  First, for Caryl Oberman, I find that $500 is a reasonable hourly rate.[9]  For Yazno-Bartle, I find that a reasonable hourly rate is $425 per hour. For Gran, I find that a reasonable hourly rate is $525 per hour.  For the work performed by Reisman, I find that $475 per hour is a reasonable hourly rate.  Finally, I find that $385 per hour is a reasonable hourly rate for the work Zuba performed.

## II.    Time Spent

The District also argues that the Oberman firm seeks reimbursement for an unreasonable amount of time spent on this matter.  Under IDEA, an attorneys' fee award should be reduced when the time and the services performed "were excessive considering the nature of the action or proceeding."  20 U.S.C. § 1415(i)(3)(F)(iii).  "In fashioning an award of attorneys' fees, the 'prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case' . . . ."  D.B. ex rel. H.B. v. Gloucester Twp. Sch. Dist., No. 08-5667, 2013 WL 1314464, at *8 (D.N.J. Mar. 28, 2013), quoting Interfaith Cmty. Org. v. Honeywell Int'l,

---

[8]     I find it is appropriate to consider the 2014 CLS fee schedule in exercising my discretion to determine reasonable hourly rates, but I do not rely on it as an "exclusive tool." M.M. v. Sch. Dist. of Phila., 142 F. Supp. 3d 396, 406 (E.D. Pa. 2015).

[9]     This is an adjustment which has a "limited impact on the total award . . ." because she only billed 1 hour of time in this case.  M.W. v. Sch. Dist. of Phila., No. 15-5586, 2016 WL 3959073, at *4 (E.D. Pa. July 22, 2016).

Inc., 426 F.3d 694, 711 (3d Cir. 2005).  I must consider "whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary."  Interfaith Cmty. Org., 426 F.3d at 711 (internal quotations and citation omitted); cf. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) ("Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary.").  However, absent specific challenges, a court should not decrease the hours included in the lodestar.[10]  Damian J., 2008 WL 1815302, at *3 ("The district court cannot decrease a fee award based on factors not raised at all by the adverse party.") (internal quotation omitted).

### A.    Duplication

The District argues that the Oberman firm has billed for duplicative time for its work on the due process hearing, noting that the firm "submitted two invoices with time records from April 5, 2013 through June 15, 2016 – one for A.K. and one for N.K."[11]  Dkt. No. 57 at ECF p. 15.  The firm recorded a total of 271.5 hours designated for A.K., a time value of $128,829.50, and a total of 151.70 hours for N.K., a time value of $67,687.50.  Id.  The District asserts that parents have not provided any explanation about "the two billing records and whether there is any duplication of services in the two invoices."  Id. at ECF p. 15-16.  The District argues that "[b]ecause there is no explanation whether the separate time records for A.K. and N.K. are duplicative or shared, all the time recorded for N.K. – 151.7 hours with a time value of $67,687.50 – should be deducted from the lodestar."  Id. at ECF p. 16.  Parents have not replied

---

[10]    The District makes no specific objections to the time spent on this matter by attorneys from Reisman Carolla Gran LLP.  Accordingly, I will not address the reasonableness of the time expended by Gran, Reisman or Zuba.

[11]    In contrast, Reisman Carolla Gran LLP prepared a single invoice for the work performed on the parallel matters involving A.K. and N.K.  Dkt. No. 48-2.

to the District's argument.

Specifically, the District notes that on the first day of the due process hearing, January 7, 2014, 7.8 hours of time was recorded for both A.K. and N.K. although "NO CHARGE" was entered in the invoice for N.K. while a charge of $3,939.00 was recorded for N.K.  Id. at ECF p. 16.  In contrast, the District argues that at least some of the time preparation for the due process hearing appears to be charged to both students.  Id.; see, e.g. Dkt. No. 48-1 at ECF p. 12 (bill for A.K. reflecting 2.5 hours on December 31, 2013 to "Prepare exhibits for Due Process Hearing"); id. at ECF p. 30 (bill for N.K. reflecting 2.5 hours on December 31, 2013 to "Prepare[ ] exhibits for DPH"); id. at ECF p. 12 (bill for A.K. reflecting 4 hours on January 2, 2014 for "Witness Preparation, RK and KM"); id. at ECF p. 30 (bill for N.K. reflecting 4 hours on January 2, 2014 for "Witness Preparation, RK and KM").

It has been held that "[a] reduction for duplication is warranted . . . if . . . attorneys are unreasonably doing the same work."  Damian J., 2008 WL 1815302, at *4 (emphasis in original). A reduction for duplication is also warranted when a single attorney bills twice for the same work.  A review of the Oberman firm's separate invoices for A.K. and N.K. raises questions about overlapping time entries with substantially similar descriptions on the separate invoices for A.K. and for N.K.  See, e.g., Dkt. No. 48-1 at ECF p. 12 and id. at ECF p. 30 (bills for both A.K. and N.K. for a total of 9.6 hours attributed to Yazno-Bartle on January 6, 2014, including 0.8 hours each for witness preparation and 4.0 hours each to prepare for due process hearing).  It is possible that parents' attorneys' time entries accurately represent the time spent on work for each child.  But it is also possible that substantially similar time entries reflect double counting of the hours spent, particularly where the majority of the billing descriptions do not specify whether the work identified was performed for just A.K., just N.K., or both children.  Cf. Damian J., 2008

WL 1815302, at *3 ("A fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.") (citation and internal quotation omitted).  As the District notes, Yazno-Bartle's declaration does not provide me with any specific information about how she or the legal support staff at the Oberman firm divided their time for work which was relevant to both A.K. and N.K.  Nor have parents provided any response to the District's argument that the parallel bills contain overlapping time entries.  On the record before me, I find that it is an appropriate exercise of my discretion to deduct the time which Yazno-Bartle invoiced for N.K.'s matter – 151.7 hours – from parents' fee award.  See Dkt. No. 48-1 at ECF p. 25-38.

### B.    Excess Time

The District also "objects to the amount of time to file, prepare for and try the administrative proceeding as excessive."  Dkt. No. 57 at ECF p. 16.  More specifically, the District contends that parents' attorneys "spent excessive time . . . prepar[ing] exhibit binders, comparing exhibits, drafting a response to a motion to dismiss, [for] preparation of Karen Misher – the mother – for the due process hearings, [and for] travel time and case closure."  Id. at ECF p. 17.  Parents have not responded to the District's objections to specific time entries.

First, the District objects to 16 hours of time billed by Yazno-Bartle for travel to and from the administrative hearing sessions.  Id.  The District also objects to 0.4 hours of time billed by Yazno-Bartle for travel to ASUA for witness preparation on December 16, 2016.  Id.  I do not find the time Yazno-Bartle billed for travel to and from the administrative hearing or for witness preparation to be excessive.  See Deptford Twp. Sch. Dist. v. H.B. ex rel. E.B., No. 01-784, 2006 WL 3779820, at *6 (D.N.J. Dec. 21, 2006) (permitting an award including time billed for travel

where the attorney "was required to attend . . . hearings and proceedings and the Court . . . assume[d] that he had no or limited control over the scheduling or length of such court proceedings or the time it took to travel to the proceedings") rev'd and remanded on other grounds sub nom. Deptford Twp. Sch. Dist. v. H.B. ex rel E.B., 279 F. App'x 122 (3d Cir. 2008); P.G. v. Brick Twp. Bd. of Educ., 124 F. Supp. 2d 251, 265 (D.N.J. 2000) (allowing compensation for travel time).  According to the invoices submitted by the Oberman office, the Hearing Officer convened at least 11 meetings for the Due Process proceeding for A.K. and N.K. See Dkt. No. 48-1.  I will not deduct Yazno-Bartle's travel time from the lodestar.

The District also objects to 4.0 hours billed on January 2, 2014 to prepare both parents for the due process hearing and to an additional 5.5 hours billed on March 17, 2014 to prepare the mother, Karen Misher, for the hearing.  It argues that Misher received approximately 7.5 hours of preparation for the hearing "which is excessive," that a "total of four hours is more reasonable," and thus asks that I deduct a total of 3 hours from the lodestar.  Dkt. No. 57 at ECF p. 18.  "The amount of time reasonably expended on preparation for an administrative due process hearing depends on the length of the hearing and the attorney's experience."  Sch. Dist. of Phila. v. Williams, No. 12-6238, 2016 WL 877841, at *5 (E.D. Pa. Mar. 3, 2016).  Given that the due process hearing required at least 11 meetings with the Hearing Officer and addressed the needs of both A.K. and N.K, I do not find the time spent preparing either parent for the administrative hearing to be excessive.

The District also challenges approximately 10 hours of time billed by Yazno-Bartle for assembly of exhibit binders as a "task that can be handled by a competent paralegal."  Dkt No. 57 at ECF p. 17.  The District argues that "[a] total of five hours of attorney time is more reasonable" and asks that "five hours . . . be deducted from the lodestar."  Id.  The District also

asks for a deduction from the lodestar for "a total of 4.4 hours" for time entries on November 17, 2013 and January 10, 2014 "to 'compare' exhibits," arguing that the "time is excessive, especially given the other entries to review the exhibits and prepare the binders." Id. at ECF p. 18.  Parents do not respond to these objections  I find that it was reasonable for counsel to spend a certain amount of time on tasks such as preparing and reviewing exhibits, but agree that Yazno-Bartle, who had assistance from a paralegal and a legal assistant, spent more time on these tasks than was required under the circumstances.  I will deduct a total of five hours from the lodestar for the time Yazno-Bartle spent preparing exhibits for the due process proceedings.

The District also contests a time entry on January 21, 2014 for 2.1 hours spent on a motion to dismiss because "prior entries indicate that the motion to dismiss was completed and sent to the client for review." Id.  However, the relevant time entry describes the work performed as "[r]evised response to MTD," work which logically follows the clients' feedback on the motion and the prior time entry for 0.3 hours to "[r]eview[ ] e-mails from RK and MK regarding changes to MTD response."  Dkt. No. 48-1 at ECF p. 14.  I decline to subtract this time from the lodestar.

Finally, the District objects to two hours billed on August 4, 2014 for a time entry on the invoice for A.K. attributed to Yazno-Bartle for "Case closure."[12]  Dkt. No. 57 at ECF p. 18, see Dkt. No. 48-1 at ECF p.20.  I will reduce the lodestar for Yazno-Bartle by an additional two hours, as parents have not made any arguments in response to the District's argument that this time "is law office overhead."  Dkt. No. 57 at ECF p. 18.

---

[12]     There is also an August 4, 2014 time entry for Yazno-Bartle on the invoice for N.K. for "Case closure."  Dkt. No. 48-1 at ECF p. 38.  This time will not count towards the lodestar because I have decided not to award fees for the time invoiced for N.K.

### III.    Prevailing Parties

The District also argues that the total fee award should be reduced because "[p]arents were unsuccessful in their claims that the School District denied FAPE offered in the December 2013 IEP." Id. at ECF p. 20.  Specifically, the District contends that the Law Offices of Caryl Oberman, unlike the Reisman Carolla, Gran firm,[13] "did not propose any reduction in their lodestar on account of the partial degree of success at the due process hearing" and asks the Court to reduce the lodestar for Oberman's firm by 25%.  Id.  Parents contend that they are prevailing parties entitled to recover fees under IDEA.  Dkt. No. 48 at ECF p. 10.  They argue that

> they obtained relief on significant issues in the due process
> hearing, where the Hearing Officer found that the District failed to
> offer either A.K. [or] N.K. a free, appropriate public education
> from the beginning of the 2013-14 school year until the District
> offered a new IEP on December 9, 2013 and that the private school
> in which the Parents placed their children was appropriate.

Id. at ECF p. 11.  Parents note that the Hearing Officer "ordered tuition reimbursement for the cost of educating both children at the private school."[14]  Id.

A "prevailing party" is a party who succeeds on any significant issue in litigation.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); D.F. v. Collingswood Borough Bd. of Educ., 694 F.3d 488, 501 (3d Cir. 2012).  A fee award "may be reduced based upon the degree of success of the prevailing party."  M.M. v. Sch. Dist. of Phila., 142 F. Supp. 3d 396, 409 (E.D. Pa.

---

[13]    "The Reisman, Carolla, Gran firm . . . acknowledged that the lodestar should be reduced to account for issues or claims on which the parents were not successful.  They propose a reduction of their lodestar from $124,466 to $89,240.10 . . . , which is approximately a 28% reduction."  Dkt. No. 57 at ECF p. 20, citing Dkt. No. 48-2 at ECF p. 7-8.

[14]    Parents  also argue that they are entitled to attorneys' fees and costs for the work performed by their attorneys "to obtain reimbursement for the twins' tuition during the pendency of the due process proceeding and the proceedings in this Court under 20 U.S.C. § 1415(j), the IDEA's 'stay-put' provision."  Dkt. No. 48 at ECF p. 15.

2015).  However, "a failure to succeed on every claim does not [necessarily] preclude a plaintiff from recovering full compensation."  E.C. v. Phila. Sch. Dist., 644 F. App'x 154, 156 (3d Cir. 2016).

      I decline to reduce the lodestar on the basis of the District's argument that parents were not successful with their claims that the twins were denied FAPE in the IEPs offered by the District in December 2013.  Counsel for parents achieved significant success at the administrative level on behalf of both A.K. and N.K. in several respects.  Based on their advocacy, the Hearing Officer found that the District denied A.K. and N.K. a FAPE from the start of the 2013-14 school year through December 2013 and also determined that ASUA was an appropriate private placement for A.K. and N.K.  This determination was critical to this Court's finding that the District was obligated to continue to fund the twins' education at ASUA through the exhaustion of all appeals from the decisions of the hearing officer.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation . . . .  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.  Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) (internal citation omitted).  Given the significance of the overall relief obtained in this action, I decline to make further adjustments to the lodestar based on parents' degree of success at the due process hearing.

## IV.  Attorneys' Fee Award

      Consistent with the adjustments identified above, I will award parents a total of $185,505.63 in attorneys' fees:  $105,199 to the Law Offices of Caryl Andrea Oberman and

$80,306.63 to Reisman Carolla Gran, LLP , an amount reached by making the lodestar

determination summarized in the table set forth below.

| Summary of Revised Lodestar | | | |
|---|---|---|---|
| **Attorney** | **Adjusted Hours** | **Adjusted Hourly Rate** | **Fees** |
| **A.K – Due Process Hearing** | | | |
| Caryl Oberman | 1.0 | $525 | $525.00 |
| Liliana Yazno-Bartle | 242.0 | $425 | $102,850.00 |
| Maureen Stankiewicz, Paralegal | 2.90 | $120 | $348.00 |
| Heike Ross, Legal Assistant | 16.4 | $90 | $1,476.00 |
| **Subtotal A.K.** | 271.5 | | $105,199.00 |
| **N.K. – Due Process Hearing** | | | |
| Caryl Oberman | 0.0 | $525 | $0 |
| Liliana Yazno-Bartle | 0.0 | $425 | $0 |
| Maureen Stankiewicz, Paralegal | 0.0 | $120 | $0 |
| Heike Ross, Legal Assistant | 0.0 | $90 | $0 |
| **Subtotal N.K.** | 0.0 | | $0 |
| **Total – Due Process Hearing** | 271.5 | | $105,199.00 |
| **Federal Civil Action** | | | |
| Judith Gran | 76.395 | $525 | $40,107.38 |
| Catherine Merino Reisman | 84.63 | $475 | $40,199.25 |
| Sarah Zuba | 4.8 | $385 | $1,848.00 |
| **Subtotal** | 165.825 | | $80,306.63 |
| **Grand Total** | 589.025 | | $185,505.63 |

## V.    Costs

Finally, parents ask the Court for an award of $1,185.86 in costs to Reisman Carolla

Gran, LLP and an award of $2,751,73 in costs to the Law Offices of Caryl Andrea Oberman.

Dkt. No. 48 at ECF p. 6.  I will consider the different elements of the costs requested in turn.

First, the District has not made any specific objections to postage and courier fees

incurred by the Oberman firm on December 30, 2013 and January 3, 2014 – a total amount of

$141.60 billed on the invoices for A.K. and for N.K.  Dkt. No. 48-1 at ECF p. 22-23, 39.

Reisman Carolla Gran has also included $106.27 in postage and courier fees among the costs it demands.  Dkt. No. 48-2 at ECF p. 19.  I will include these costs in the total award to parents.

Second, the District argues that parents cannot recover either the costs of copying and travel or the $800 that parents spent on federal court filing fees.  Dkt. No. 57 at ECF p. 20.  The District contends that the costs claimed for travel and for copying exhibits "should be disallowed as general law firm overhead, which is included in the awarded hourly rate."  Id.  I will disallow the travel expenses that parents request, as 28 U.S.C. § 1920 does not authorize their recovery.  See Neena S. ex rel. Robert S. v. Sch. Dist. of Phila., No. 05-5404, 2009 WL 2245066, at *11 (E.D. Pa. July 27, 2009) ("Costs for parking, train fare, mileage, and travel expenses are not authorized by § 1920.").  The District is mistaken, however, in its argument that copying costs "are not authorized by 28 U.S.C. § 1920."  Dkt. No. 57 at ECF p. 20.  "The cost of making copies is reimbursable under 28 U.S.C. § 1920(4)."  Charles O. v. Sch. Dist. of Phila., No. 13-0512, 2014 WL 4794993, at *10 (E.D. Pa. Sept. 26, 2014); see also I.W. v. Sch. Dist. of Phila., No. 14-3141, 2016 WL 147148, at *21 (E.D. Pa. Jan. 13, 2016) ("Section 1920 specifically authorizes reimbursement for copying costs.").  Accordingly, I find it appropriate to award the Oberman firm copying costs in the amount of $1,179 for A.K. and $1,196.85 for N.K., a total of $2,375.85.  I will also award parents the copying costs requested on behalf of the Reisman Carolla Gran firm.

Finally, the District is mistaken in its argument that that parents' attorneys are not entitled to recover the requested federal court filing fees.  The $800 cost for filing these actions in federal court is reimbursable pursuant to 28 U.S.C. § 1920(1).  Cf. Neena S., 2009 WL 2245066, at *11 ("The . . . cost for filing this action in federal court is reimbursable, and will be allowed.").

In total, I will award $3,703.31 in costs to parents:  costs incurred by the Law Offices of

Caryl Andrea Oberman in the amount of $2,517.45 (a sum reduced to exclude travel expenses) and by Reisman, Carolla, Gran, LLP in the amount of $1,185.86 (the full amount requested).

An appropriate Order follows.